## HAYNES v. WHEAT & FENNELL.

1. The sureties of an administrator, against whom a judgment is rendered, may discharge the judgment by a payment to the clerk, without waiting for an execution to issue against their principal; it is therefore wholly unimportant that an execution which had issued against their principal, and returned *nulla bona* previous to such judgment, was irregularly issued.

2. Where one who was clerk of a County Court, and also guardian *ad litem* to a minor, received payment, as clerk, of a judgment rendered in favor of the minor, and gave his receipt as clerk, he cannot by an entry upon his docket afterwards, change the character of the payment, so as to make it appear he received it as guardian *ad litem*.

3. The receipt of a clerk, like that of any other person, is open to explanation by extrinsic proof.

4. The clerk of a court in which a judgment has been rendered, has authority to receive the amount in money, before or after an execution has issued.

5. Neither a clerk, or sheriff, has authority to receive any thing in payment of a judgment, or execution, but money, and a payment in any thing else, would be no discharge of the defendant in execution, though the sheriff would be precluded by his return from denying that he had received money in its discharge.

6. Although the sheriff, by a return of satisfaction, subjects himself to pay the plaintiff in coin, he has the power to receive in discharge of the writ, such bank notes as are then passing in the community current as money, although they may not be convertible into specie at pleasure, at the nominal amount; and such a receipt, if *bona fide*, will discharge the defendant in execution, and fix the liability of the sheriff and his sureties.

Error to the Chancery Court of Madison.

THE bill was filed by the defendants in error, and alledges that they became the sureties of one George W. L. Haynes, as the administrator of Stephen S Haynes, late of Madison county. That on — day of June 1841, the administrator made a final settlement, and a decree was rendered in favor of the defendant in error, a minor, and distributee of the deceased, for $965 37, at which time one Richard B. Purdom was guardian, *ad litem*. That an execution issued thereon, against the administrator, was returned no property found,

and an execution then issued against the complainants, as his sureties, when the cause was taken up by writ of error, and dismissed, after which, on the 13th August, 1841, complainant paid to R. B. Purdom, clerk of the County Court, $1,016 88, which he understood to be in full of the decree, interest and costs, but which he now understands to be two dollars short of the full amount.

That defendant in error, who is an infant under ten years of age, and a non-resident, or some one for him, has caused an execution to be again issued against complainant, on the decree. The bill prays an injunction, &c., which was granted.

The defendant, by his guardian *ad litem* answered the bill, and denies that the money was paid to Purdom, as clerk of the County Court, but insists that it was paid to him as guardian, and that the execution which issued, and upon which the money was paid, issued in favor of Purdom as guardian, and that by the entry made by Purdom, on the docket, it appears, that he received the money as guardian, and not as clerk of the court, and insists, that such a payment does not discharge the liability of the sureties of the administrator. Appended to the answer are the executions which issued previous to the writ of error, which recite the decree as being made in favor of Purdom, as guardian *ad litem*.

Depositions were taken by the complainants, proving the following instrument of writing by Purdom.

| Jas. H. Haynes, by his guardian, v. James Wheat. | Judgment, Orphans Court, .... $963 37<br>Int. 7 ms. 7 days, ............ 46 44<br>Or. Court costs,............... 2 25<br>Costs of writ of error,.......... 4 82 |
| --- | --- |

$1,016 88

Rec'd of James Wheat, the above amount of one thousand and sixteen dollars and eighty-eight cents, the full amount of said judgment, in the Orphans' Court of Madison county, Ala. Aug. 13, 1841. RICH'D P. PURDOM, C. C. Court.

It was proved, that this was in the hand writing of Pur-

dom, who was at the time clerk of the County Court. They proved also by a witness, that he advised Wheat to pay the money to Purdom as clerk, and not as guardian. They also proved by another witness, who was present at the time, that the money was paid to Purdom as clerk, and that Wheat refused to pay it to him in any other character.

Purdom was also examined as a witness, and states, that the receipt bears the true date—that the money was paid in Alabama bank notes—that the "affix" to the receipt, was not the official style generally used by him, which was "C.C.C." and sometimes "Cl'k C. C." though it was used as in said instrument on some occasions. After the money came to his hands, he treated it on the execution docket as though it had been received by him as guardian *ad litem*, believing he had the authority to do so—Wheat was not privy to the entry made on the docket; has paid $60 of the money to a guardian of defendant in error.

The Chancellor made his decree, perpetuating the injunction, which is now assigned as error.

JAMES ROBINSON, for plaintiff in error, contended, that the case was not made out by the proof. The judgment was in favor of the minor against the administrator, whilst the receipt speaks of a judgment against Wheat, and this discrepancy is not explained by the proof. Nor is it satisfactorily shown, that the payment was made to Purdom as clerk; his entry on the docket is satisfactory to show, that he understood he was receiving it as guardian.

In such a proceeding as this, there can be no judgment against the sureties, until an execution against the principal has been returned no property found. [Clay's Dig. 147, § 24, 25.) The execution which issued against the administrator, recited a judgment in favor of Purdom as guardian, and as such a judgment is invalid, the return of the execution did not authorize the statute judgment against the sureties. [5 Porter, 223; 5 Ala. Rep. 678.] The statute judgment was absolutely void. [1 Cow. Rep. 711.]

The clerk had no power to receive Alabama bank notes in discharge, or payment of the judgment. If the clerk may

receive bank notes, he may take any thing else in discharge, and by giving a receipt conclude the plaintiff. The executive officer has no discretion, and can only give a valid, binding discharge when he receives payment in money. [2 How. U. S. 244; 3 Id. 717; 1 Cowan, 46; 2 Porter, 386; 7 Ala. Rep. 703, 783; 5 How. Miss. 246.] The plaintiff may elect to take bank notes thus received, but is under no obligation to do so, and may elect to consider it no payment. In the case cited from 5 Humphreys, 15, the court puts the decision upon the ground that the bank notes were convertible; such was not the case here.

S. PARSONS, contra, The irregularity complained of, was not in the decree, as in the case cited, but in the process, and was amendable even upon a motion to quash. Here, the question arises collaterally, which altogether varies it, although the court might have quashed them, they are not therefore void. [1 Cow. 734; 1 Salk. 319.]

Leaving the execution out of view, there was a decree against the administrator, which he might have discharged without execution, and he being insolvent, his sureties might do it for him. [Chitty on Bills, 426; 1 Wilson 47; 5 Ala. R. 678.]

The payment in Alabama bank notes was good—they are *quasi* money. [1 Burr. 457.] A will bequeathing money will pass bank notes. [6 H. & J. 47; 2 H. & G. 410.] A sheriff may receive bank notes in payment of an execution. 12 Johns. 220, 395; 4 N. H. 198; 5 Humphreys, 15, 40, 140; 4 Monroe, 547; 5 Id, 336, 375,]

ORMOND, J.—The decree made by the Orphans' Court, appears to have been entirely regular. It is alledged in the bill that it was in favor of the infant, and this fact is not controverted, but is admitted by the answer. Such being the fact, the recital in the execution, that the decree was in favor of the guardian *ad litem*, was a mere clerical *misprision*, and conceding that it could have been quashed for this cause, yet if the administrator had paid the money to the sheriff, he would have been protected under it, as the process was not void, but voidable merely; nor could the plaintiff be heard to

alledge the irregularity of the process he had himself sued out. Such being the fact, it would seem to follow, that the return of no property upon the execution against the administrator, would authorize an execution to issue against the sureties upon the statute judgment. In addition, it is clear, the administrator would have been authorized to discharge the judgment against him, by a payment to the clerk of the court, and he being insolvent, what possible objection could there be to the sureties paying it without execution against them. They were responsible to the plaintiff, as well as the administrator, and had the right to discharge the judgment without any further accumulation of costs; and if they choose to waive the issuance of an execution against their principal, and admit their liability without it, the plaintiff cannot raise the objection that they have not been fixed by the regular issuance of an execution against their principal.

We consider the proof clear, and unequivocal, that the money was paid to Purdom, as clerk of the court, and that it was paid upon this judgment. No 'difficulty whatever can arise, from the clerk describing it in his receipt as a judgment against Wheat. The amount, date of the judgment, and all the facts and circumstances, show it to be the same. It was so considered by those representing the interests of the infant, as they caused an execution to be issued, subsequent to the payment, reciting all the facts which created the statute judgment against Wheat. The receipt is not conclusive upon any one, and if explanation was wanting, it is fully explained. But this question, though raised upon the argument, is not made upon the pleadings. The answer does not controvert the allegation of the bill, that the money was paid upon this judgment, but insists that it was paid to Purdom, not as clerk, but as guardian.

We consider this question as clearly settled as the other. As *guardian ad litem*, Purdom had no authority whatever to receive the money, and from the proof of Eldridge, it appears, Wheat refused to pay it to him in any other character than as clerk. As such, then, he must have received it, no matter what defect there may be in his receipt; whether he added two or three letters to his name, as the " affix," or symbol, of his official character. But it appears from his deposition, that

he did sometimes sign his name as clerk of the court, in the mode adopted in this instance. Of the proper mode of doing this, he was the best judge. It is impossible that the interests of those doing business with him, as clerk, should be affected by the omission of a C at the end of his name. Equally plain is it, that he could not by any act of his subsequently, or by any indorsement or entry on his docket, change the character of the act, so as to deprive the defendant of the benefit of the payment. So far as it is evidence of his intention, whatever weight it might be entitled to if standing alone and uncontradicted, it can have none when opposed by the testimony afforded by his own receipt, and the testimony of Elldridge, not to speak of the strong inference arising from his want of authority to receive it as guardian.

The clerk of a court in which a judgment is rendered, has authority to receive the amount for which the judgment was rendered, either before or after an execution has issued upon it. [Murray v. Charles, 5 Ala. R. 678.] Doubtless this is not an authority to a clerk, any more than it is to a sheriff, to receive any thing in discharge of the judgment but money. He cannot take in its discharge *choses in action*, or pay a debt of his own, but can only receive that which he can pay over to the plaintiff. He, however, would be precluded by his return from denying that he had received payment in money.

What is entitled to be considered money? Are bank notes, which at the date of this transaction constituted the entire circulating medium of the country, as they do in a great measure at the present time, to be excluded from that appellation? This is a question of no small magnitude, not only to the executive officers of the law, but to the great body of the people who may be suitors in our courts.

In the present highly commercial condition of society, and under the influence of the credit and banking systems, which by excluding the precious metals from general use, has made the paper which occupies its place, the actual medium of exchange, and the representative of the labor, and property of the country, it would be strange, if the executive officers of the law had not power to receive it in payment of a judgment. The commercial character of the age has silently produced a

*change in our language.* No one is misunderstood, or sus-
*pected of telling* a falsehood, when he speaks of having mo-
ney in his possession, though it consists entirely of bank
notes. It has worked a corresponding change in the com-
mon law, accommodating itself to the altered condition of
society. In the great case of Miller v. Race, 1 Burr. 457,
which was trover for a bank note which had been stolen, and
which came to the possession of the defendant, for a valua-
ble consideration, and without notice of the robbery, Lord
Mansfield said, that bank notes "were as much money, as
guineas themselves are, or any other current coin, that is used
in common payments, as cash, or money." So they are a
good tender, unless they are objected to at the time. Under
the term money in a will, bank notes will pass. [6 H. & J.
53 ; see also, 2 H. & G. 410 ; 12 Johns. 220, 395.)

In Crutchfield v. Robbins, 5 Humph. 15, this precise point
came up. There, as in this case, there had been a payment
of a judgment in current bank notes, to the clerk, and it was
held to be a good payment. It is however urged, that the
court in that case, lay stress upon the fact, that the bank notes
there received, were "convertible," as well as current. The
only proof in the record upon this point, is that of Purdom,
who says, the money was paid in Alabama bank notes, the
discount, if any, he does not recollect. It does not, then,
appear from the record, whether these notes were then *at
par*, or in other words, convertible at pleasure into specie, for
their nominal amount, or not, but we ought perhaps judicial-
ly to know, that at that time our State bank notes were at a
discount. They were nevertheless current, and the only cir-
culating medium, passing in payment of debts, and instead of
specie, at the existing discount.

We do not think this varies the case. Considered as a
question of power in the officer, that must be considered as
money, which passes as such in the common transactions of
mankind. The sheriff would have no power to take the
notes of a broken bank, in payment of an execution, though
they might have a speculative value depending upon un-
known facts, and uncertain contingencies. Such worthless
paper would not have one of the attributes of money. It
would be neither current, or convertible into specie, and in-

stead of being a medium of exchange, or a measure of the value of other commodities, is itself a commodity. Having thus ceased to perform the uses of money, it is no longer regarded, or received as such by the community. The bank notes received in this case, though, from the operation of temporary causes, depressed at the time, had a known and fixed value in public estimation, secured to them by the guarantee of the State—they were the common medium of exchange —in a word, they were the money of the country. Nor could the plaintiff by possibility be injured, by the clerk receiving them in payment, as he could, if he thought proper, cast on the officer the duty of converting them into specie. This is no more than would have happened if the clerk had received payment in bullion, or in foreign coin not a legal tender.

The two cases principally relied on by the counsel for the plaintiff in error, are not hostile to this view. In Griffin v. Thompson, 2 How. U. S. Rep. 244, the Marshal had returned upon an execution, that he had " received thereon $1000 in post notes of the Union Bank." The return was quashed by the court, and another execution issued, and a motion was then made to have satisfaction entered. The Supreme Court held, that this was not a legal return, and the reception of the bank notes by the marshal, no satisfaction of the execution. Of the correctness of this decision we entertain no doubt. It has already been stated, that as the mandate of the writ is to make the money which the writ calls for, the sheriff can make no other return of satisfaction, but that he has collected the money. The question in this case, is not, whether a return by the clerk, that he had collected the amount of the *fieri facias* in Alabama bank notes would be a legal return, nor does it appear what return he actually made; it is, whether the officer had power to receive, in payment of the writ, bank notes then current as money, so as to discharge the defendant, and to bind himself and his sureties to the plaintiff. That he had such power, we do not entertain the least doubt.

In the case referred to, not only was the return of the sheriff unquestionably bad, but it also appeared that the notes of the Union Bank were at a discount of fifty per cent. and con-

sequently were not current as money. They had in fact become a mere commodity, of uncertain and daily fluctuating value.

The case of the Planters' Bank v. Scott, 5 How. Miss. 246, also relied on, does not present the question. Not only was the return day past when the bank notes were received, but they were not received by the sheriff in discharge of the execution, but conditionally only, to be a payment if the plaintiff elected to receive them; nor were the notes either current as money, or convertible into specie.

In the discussion of this question, we have felt the difficulties attending it, and the magnitude of the principle involved, and whilst we admit that the officer must account with the plaintiff in the current coin of the country, if he demands it, yet we are clear, that he has the power to receive from the defendant, in discharge of the writ, that which is then passing in the community, current as money, and by the common consent of mankind, is considered as money, although it may not be convertible into specie at pleasure, at its nominal amount. That such a receipt, if *bona fide*, will discharge the defendant in execution, and fix the liability of the sheriff and his sureties.

The decree of the Chancellor dismissing the bill must be affirmed.