WEST, OLIVER & CO. v. BALL & CROMMELIN.

1. An attorney at law, in virtue of his general powers as such, has no authority to receive depreciated bank paper in payment of a debt placed in his hands for collection, and if he collects in such funds, his client is not bound to accept it.

2. A usage of the attorneys at any particular place, to collect money of their clients in bank bills of the State Bank, though selling at a depreciation, being contrary to law, cannot be supported. But if such a usage were lawful, it would be controlled by the direction of the client not to collect in depreciated funds.

3. B. & C., attorneys in Montgomery, collected by judgment, a debt for a client in New York, and received in payment bank bills of the State Bank of Alabama, with which they purchased a check from the Branch Bank at Montgomery, for the amount of their debt, (less their fee), which they remitted to the clients, on the 15th June, 1842. On the 23d June, they addressed a letter to the attorneys, refusing to receive the check, and denying their right to collect in depreciated funds, and informing them, they had remitted the check to P. & T. at their risk, for the purpose of exchanging it, or adding to it the amount of the exchange on New York. P. & T. communicated the contents of the letter to the attorneys, but they not offering to do any thing, remitted the check to the clients. On the 21st July ensuing, the clients again wrote to the attorneys, informing them that P. & T. had declined acting in the business for them, and had returned the check, and that it was held subject to their order, and requiring instructions in regard to it. Alabama bank notes were at a depreciation in Mobile, on the 25th May, 1842, of 25 per cent., and at the time of the receipt by the plaintiffs, of 30 per cent. in New York, at which rate it continued up to the 22d September following, when the clients sold it at this discount. Held, that these facts did not authorize the inference, that the clients had ratified the act of their attorneys—that their silence, when applied to by their clients, was tantamount to a refusal to act, and that after waiting a reasonable time, they had a right to adjust the matter by a sale of the check.

Writ of Error to the Circuit Court of Montgomery.

THIS was an action of assumpsit at the suit of the plaintiffs in error, to recover of the defendants the difference in value between a sum of money collected by them as attorneys at law for the plaintiffs, in bills of the Bank of the State

of Alabama and its branches, and specie funds.    The decla-
ration also contained the common counts.

The cause was tried by a jury, who returned a verdict for
the defendants, and judgment was rendered accordingly.
From a bill of exceptions sealed at the instance of the plain-
tiffs, it appears that they had employed defendants as attor-
neys to collect a note of about $1000, made by Yeldell, De-
ming & Co.; that the plaintiffs resided in New York, and the
makers of the note in Montgomery.

The plaintiffs inclosed the note in a letter to Messrs. Phil-
lips & Tarrant of Montgomery, in which they requested them
to settle it for them, and entrust it, if necessary, to a respon-
sible friend for that purpose, or employ some responsible per-
son to go to the residence of Messrs. Y. D. & Co. and settle
it, the payees agreeing to pay all costs and expenses attend-
ing the business.    The mode of settlement proposed, was to
obtain as much cash as possible, at least more than half, and
to give time for the residue, not longer than six months.    In
a postscript to their letter, the plaintiffs say, " by a written
agreement, Yeldell, Deming & Co. agree to pay ' all ex. over
2 1-2 per c. that it may cost to collect and convert into cur-
rent funds in New York, our note due 4-7 April, 1840, for
1026 31-100 dolls.    Signed, Y. D. & Co.'    In settlement,
please exact according to this agreement.    If you should be
able to get any money on it, please forward by draft."

After an attempt to obtain the money without suit, Mr.
Phillips, one of the firm addressed, placed the note in the
defendants' hands for collection, without any instructions as
to the kind of money to be received.    Phillips acted for the
plaintiffs under the letter, and placed the same in the defend-
ants' hands before the collection was made, which after re-
taining for some time, they returned to him.

Suit was brought in the federal court in the spring of 1841,
judgment obtained in the fall, and the money made by the
marshal in the spring of 1842, who paid over to the defend-
ants in satisfaction of the judgment, bills of the Bank of the
State of Alabama and its branches.    With these bills, the de-
fendants procured a check from the Branch Bank at Montgo-
mery, payable in current funds, for the amount of the debt,
(less fees), which they remitted to the plaintiffs on 15th

June, 1842, in payment of the debt. On the 23d June, 1842, plaintiffs addressed a letter to the defendants, which was received in due course of mail, in which they say, they refuse to receive the check, denying the defendants' right to make a collection in such funds, informing them that they had remitted the same to Phillips & Tarrant, who would call on them for the purpose of exchanging it, or adding to it the amount of the exchange on New York. Plaintiffs say further, "the amount of money is at your risk during the time you may take to arrange it." A letter of the same date was written to Phillips & Tarrant of the import indicated, and referring to that to the defendants.

Phillips, on the receipt of the letter to P. & T. communicated its contents to the defendants, but did not tender them the check, nor did the defendants offer or decline to take it. P. did not show the plaintiffs' letter to the defendants with the intention to return the check, or act in the matter, unless defendants offered to take it back. Upon the defendants not doing any thing, he remitted the check to the plaintiffs.

On the 21st July, 1842, the plaintiffs again wrote to the defendants, recapitulating the substance of their previous letter, informing them that Messrs. P. & T. had declined acting in the business for them, had returned the check, and that plaintiffs held it subject to their order—"declining to receive it for the full amount of our (their) claim," and adding, "the check is on the Bank of Mobile for $1118 10-100. No. 82. Please instruct us regarding the check."

It was proved that the bills of the State Bank and its Branches, were on the 25th May, 1842, at a depreciation in Mobile of *twenty-five per cent.* and at the time of the receipt of the check by the plaintiffs, in June, at *thirty per cent.* in New York; at which rate it continued, with slight fluctuations, up to the 22d September following, when the plaintiff sold the check at that discount. The aggregate received by them being $782 67.

The attorneys of Montgomery, previous and up to the time the judgment was satisfied, as above shown, were in the habit of collecting money for their clients in such bills, and it was the customary mode of collection with them. The written agreement, an extract of which is contained in the

postcript of the plaintiffs' first letter was not in the hands of the defendants, until after the check was remitted.

The court charged the jury, that the letter to P. & T. was a general power to have the note collected, and if they believed that P. & T. lived in Montgomery, that they employed defendants to collect the money without giving them any specific instructions; that it was the general custom of attorneys to collect debts in the kind of money collected in this case, then defendants are not liable in this action; although Messrs. P. & T. may have been ignorant of the existence of such a custom, yet it entered into, and formed a part of the contract.

Although the jury should believe that the letter containing the postcript was in defendants' hands, and they read the postcript, yet, unless the plaintiffs placed the agreement itself in defendants' hands, before the collection of the money, the defendants were not bound, in opposition to the custom, to obtain satisfaction of the judgment in gold or silver, or other funds than those received by them. The questions arising upon the ruling of the court are regularly reserved.

J. A. ELMORE, for the plaintiffs in error, made the following points: The law fixes the duties of attorneys, and no usage can vary their duties. [Price, et al. v. White, 9 Ala. Rep. 563, 566; Cook & Lamkin v. Bloodgood, 7 Ala. Rep. 683.]

The check was payable in this State, in *current funds*, here, and does not mean *monies*, and unlike the cases in 4 Ala. Rep. 88, 140; Carlisle v. Davis, 7 Ala. Rep. 42. The proof showed that it was purchased with notes of the State Bank and Branches, then at a discount of twenty-five per cent.

A demand of the agent of the monies misapplied, is no ratification of his acts. [Blevins v. Pope & Son, 7 Ala. 371.] But if a ratification, it would not discharge the agent, but the party only with whom the agent dealt. [Cook & Lamkin v. Bloodgood, 7 Ala. Rep. 683; Bell v. Cunningham, 3 Peters, 81.] On refusal of defendants to arrange the debt, plaintiffs had the right to sell the check, and charge defendants with the difference.

J. W. Pryor, for the defendants in error, made the following points : 1. There is nothing in this record which shows that the check which defendants sent to plaintiff, if presented at the Bank of Mobile, would not have been paid in gold and silver. The check was payable in current funds. The plaintiffs put their refusal to receive the check on the ground that it was payable in current funds, not on the ground that it was not drawn on New York. [4 Ala. R. 88.] There is no evidence in the record tending to show what "current funds" mean in the check. [Ib. 140.] In the absence of any such evidence, these words mean necessarily but one thing—that they are money—gold and silver. The court cannot infer that they mean any thing else. It is not necessary to inquire what might be the effect of evidence. tending to show that the words mean any thing else than money. Then, the plaintiffs received from defendants a check for the amount of the demand on the Bank of Mobile, which Bank has never stopped payment. They did not object to the check on the ground that it was payable in Mobile. The check was a good one for money, payable at a place not objected to. There is no evidence in the record tending to show that the check would not have been paid in full if presented at the Bank of Mobile.

2. But instead of presenting the check at the Bank, for payment, the plaintiffs sell it. By this act they ratified the acts of defendants, without reference to the character of the check. The sale was an assumption of ownership by the plaintiffs, and amounted to a full ratification of the acts of defendants, &c. The plaintiffs in selling acted as principals, and therefore as owners of the check, or as agents of the defendants. They could not act as agents of the defendants without some authority, express or implied. No express authority is shown, and no implied authority can be inferred from the acts of the plaintiffs and defendants. These acts indicate the intent of the plaintiffs to act on their own account. The sale of the check, instead of presenting it at the Bank, was a clear act of ownership. This case is not at all analagous to the case of a contract to pay specific articles, where a tender of the articles, according to the terms of the contract, vests the title to the articles in the party to whom

the tender is made, and discharges the party making the contract from all liability on the contract, &c. If the party, after the tender, retain possession of the articles, he holds them as the *bailee* of the party to whom the tender was made, &c. [Lamb v. Lathrop, 13 Wend. 95; 2 Kent's Com. 508, 509.] In the case before the court there was no tender, and if a tender had been made, it would not have vested the title to the check in the defendants, for the plaintiffs in error insist that it was never out of them. But the act of selling the check was a ratification of the acts of the defendants. [Story's Agency, 245, § 250; 247, § 253; 248, § 255; 250, § 258; Cornwall v. Wilson, 1 Vesey, sen. 509; Pickett v. Pearsons, 17 Vermont, 470, 478.] These two cases are very strong.

3. The charges given were abstract, for it was not material in what the defendants collected the amount of the judgment, as they remitted to the plaintiffs a check for the whole amount due them, payable in " current funds;" that is, in *money.* The remittance being thus made, it was an immaterial inquiry as to the character of money, or Bank paper, in which the collection was made.

COLLIER, C. J.—In Gullett v. Lewis, 3 Stew. Rep. 23, it was said, that an attorney at law is the agent of his client, and when a note is placed in his hands to collect, the only power granted to him is to receive the money, if the debtor will pay it, or to enforce its payment by suit; and consequently he has no right to dispose of the demand in payment of his own debt, or to accept any thing in discharge of the liability but cash. [See also Cook & Lamkin v. Bloodgood, use, &c. 7 Ala. Rep. 683.] It has been decided, that a paper medium of currency is not money. [Lange v. Kohne, 1 McCord's Rep. 115.] And if an attorney collect bank bills in lieu of specie, without authority, he is responsible as for a failure to collect. [Wickliffe v. Davis, 2 J. J. Marsh. Rep. 69.] As to the description of funds which a sheriff should receive on a *fieri facias,* or by which a judgment may be satisfied, see Catlett v. Alexander, 4 How. Rep. (Miss.) 404; Morton v. Walker, 7 Id. 554; Gasquet v. Warren, 2 S. & Mar. Rep. 514; Wood v. Robinson, 3 Id. 271; Lehr v.

44

Rogers, Id. 468; Anketel v. Torrey, 7 Id. 467; Tutt v. Fulgham, 5 How. Rep. (Miss.) 621; Anderson v. Carlisle, 7 Id. 408; Havener v. Kerr, 1 South. Rep. 58; Cox v. State Bank, 3 Hals. Rep. 172; Hallowell, &c. Bank, 13 Mass. Rep. 235; Anderson v. Hawkins, 3 Hawks' Rep. 568; Moody v. Mahurin, 4 N. Hamp. Rep. 296; Goodenow v. Duffield, Wright's Rep. 457; Adkins v. Blake, 2 J. J. Marsh. Rep. 40; Sinclair v. Piercy, 5 Id. 64; Bobo and Johnson v. Thompson, 3 Stew. & P. Rep. 385; Haynes v. Wheat & Fennell, 9 Ala. Rep. 239.]

We think it clear that an attorney at law, in virtue of his general powers as such, has no authority to receive depreciated bank paper in payment of a debt placed in his hands for collection, and if he collects it in such funds, his client is not bound to accept it in satisfaction. The debtor cannot discharge himself by a payment in any thing else than gold and silver, without the consent of his creditor; nor does the mandate of a *fieri facias* require of the officer to make of the defendant's estate any thing else than gold or silver. And if he accepts bank bills which are selling at a discount, neither himself nor the attorney of the plaintiff can compel the latter to receive them as money. These conclusions are so fully supported by the citations we have made, that they do not require illustration.

But if the law were otherwise, the instructions of the plaintiffs in their letter to Messrs. Phillips & Tarrant, and the postcript thereto, would have modified the duty of the defendants, and furnished a different rule for their guidance. It was not necessary that the agreement of Messrs. Y., D. & Co. recited in the postcript should have been *placed in the defendants' hands*, in order to charge them with notice of its contents, or to have informed them in what description of funds the plaintiffs wished the collections to be made. The instructions contained in the letter, and the recital of the agreement were quite sufficient.

In respect to usage of attorneys in Montgomery, to collect the demands of their clients in bills of the bank of this State and its branches, though selling at a depreciation, we are satisfied that it did not, under the circumstances of the present case, authorize the defendants to make a collection in such

funds. It has been repeatedly decided, that the usage of no class of men can be supported in opposition to the established principles of law. [Homer v. Dorr, 10 Mass. Rep. 29, 29; Newbold v. Wright, 4 Rawle's Rep. 195; Henry v. Risk, 1 Dall. R. 265; Stoever v. Whitman, 6 Binn. R. 417; Brown v. Jackson, 2 Wash. C. C. Rep. 24; Westfall v. Singleton, 1 Wash. Rep. 227; Prescott v. Hubbell, 1 McC. Rep. 94; Bryant v. Commonwealth Ins. Co. 6 Pick. Rep. 131; Bolton v. Colden, 1 Watts' Rep. 360; Price v. White, 9 Ala. Rep. 563; Desha, Smith & Co. v. Holland, at this term.] In Barksdale v. Brown, 1 Nott & McC. Rep. 519, it was held, that no usage will authorize a factor or agent to depart from positive instructions. Nor will the usage of a particular business bind a party who makes a contract relating to it, unless the usage is so general as to furnish a presumption of knowledge, or it is proved that he knew it. [Wood v. Hickck, 2 Wend. Rep. 501; Stevens v. Reeves, 9 Pick. R. 198.] So it is said that a custom should not only be so ancient as to warrant the inference that it is generally known, but it should be certain, uniform, and reasonable. [Rapp v. Palmer, 3 Watts' Rep. 178; Consequa v. Willings, Peters' C. C. Rep. 230; Chastain v. Bowman, 1 Hill's R. (S. C.) 270; and cases cited in Price v. White, *ut supra*.]

Even if it were competent to modify by usage the law which regulates the duties of attorneys at law in the collection of money, such a usage could not operate in opposition to the instructions of the client. If an attorney receives a note or other evidence of a debt to collect, with instructions as to the kind of funds to be received in payment, these instructions would, so far as they extended, constitute the contract between himself and his client, and he would be chargeable for any loss which would result from a departure from them. The agreement of Messrs. Y., D. & Co. recited in the postcript of the first letter shows, that the plaintiffs were not to lose more than two and a half per cent. in transmitting their funds to New York; and this agreement was not only obligatory upon Messrs. Y., D. & Co. but should have been regarded by the defendants as a direction to them. But if the plaintiffs had given no instructions on this point, was it not

the duty of the defendants to have collected what the face of the note imports they had promised to pay—a certain sum in money ; and is not any custom which changes the implied undertaking of attorneys, so as to permit them to receive depreciated bank paper as an equivalent for money, unreasonable, and in opposition to law ? *Besides,* does it appear that the custom was known to plaintiffs, or of such ancient date that their knowledge will be presumed ? We do not deem it necessary to stop to answer these questions, for it is clear from what has been already said, that the custom relied on, cannot be supported against the plaintiffs.

We can perceive nothing in the facts from which it can be inferred, that the plaintiffs ratified the act of the defendants, in collecting their debt in bills of the Bank of the State and its Branches. As soon as they received the draft, payable in "current funds," they addressed a letter to the defendants, in which they are informed that the plaintiffs refuse to receive it, and deny their right to collect such funds ; *and further,* that the draft had been remitted to Messrs. P. & T. who would call on them to exchange it, or add the rate of exchange on New York, &c. Mr. P. called on the defendants immediately on the receipt of the letter to Messrs. P. & T. and communicated its contents to them, which was substantially the same as that written to the defendants. After the return of the draft by Messrs. P. & T. to New York, the plaintiffs wrote to the defendants another letter of the same import as the first. It is explicitly stated that the first letter was received in the due course of mail, and it is not pretended that the second did not reach its destination.

The first letter written to the defendants was of the same date of that to Messrs. P. & T., and must have been in their hands when Mr. P. called on them. This letter, when connected with the fact, that Mr. P. informed them that he had the draft, was an offer to return the draft, or adjust the matter as the plaintiffs proposed ; and the defendants' silence was tantamount to a refusal to do any thing in the business. To show the correctness of this proposition, it is only necessary to state it.

Perhaps the proof would have been less liable to criticism if it had been shown *in totidem verbis*, that by " current funds," were meant bills of the State Bank and its Branches; but is not this fairly inferable from the fact that the collection was made in that description of funds? However this may be, the reverse cannot be assumed, and all the defendants can claim is, that the fact should have been submitted to the jury. This was not done, but the rulings of the court foreclosed the inquiries of the jury on the point.

The remaining question then is, were the plaintiffs bound to present the draft to the Bank of Mobile for payment. We think no such obligation rested upon them. The plaintiffs resided in N. York, and the entire transaction shows, that they there expected to realize their funds, however the remittance was made. Arter waiting upon the defendants for a reasonable time, to adjust the matter, so that they could receive their money, with a deduction of nothing more than the difference of exchange between New York and Alabama, if exchange on specie or its equivalent was in favor of the former, there was no objection to putting the draft into the market.

This view is decisive of the case, and the consequence is, that the judgment must be reversed, and the cause remanded.