## AICARDI vs. ROBBINS.

[MOTION TO SET ASIDE ENTRY OF SATISFACTION OF JUDGMENT.]

1. *Payment of judgment to clerk.*—The clerk of a court, in which a judgment has been rendered, has statutory authority to receive payment, (Code, § 651; Revised Code, § 771,) and to enter satisfaction thereof; but he can only receive money, such as the plaintiff is bound to accept, and has no authority to receive depreciated paper currency; consequently, the reception by such clerk, in October, 1864, of treasury-notes of the Confederate States and of the State of Alabama, was unauthorized, and did not discharge the judgment. (Overruling *Haynes v. Wheat & Fennell,* 9 Ala. 239.)

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. B. F. SAFFOLD.

THIS was a motion to set aside an entry of satisfaction of a judgment. The judgment was rendered, in said circuit court, on the 19th November, 1862, in favor of George Robbins and Seleta Jackson, against Antonio Aicardi and Samuel M. Hill, for the sum of $3,503.30 debt, and $529.37 interest ; the action, which was founded on a promissory note, having been commenced on the 8th April, 1861. An execution was issued on this judgment, on the 5th December, 1862, on which the plaintiffs' attorneys made a written endorsement, dated the 22d December, 1862, directing the sheriff to receive, " in payment of said execution, at par, the bills of the banks of this State, and treasury-notes of the Confederate States ;" and under this endorsement the sheriff received the notes specified, in payment of the interest, commmissions, and costs, and returned the execution, " Stayed by operation of law as to the principal." No other execution was ever issued on the judgment ; but, on

the 22d October, 1864, one of the defendants in the judgment paid to the clerk of the court, in treasury-notes of the Confederate States and of the State of Alabama, the full amount due on the judgment; and the clerk thereupon made an entry of satisfaction on his execution docket. The motion to set aside this entry was made on the 23d May, 1866, and was heard at the May term, 1866, before the court, by consent, without the intervention of a jury. On the trial, as the bill of exceptions shows, the plaintiffs offered in evidence the entire record of the cause, including the entries on the execution docket, and then offered the clerk of the court as witness, who testified, in addition to the facts above stated as to the payment of the money due on the judgment, "that he never received any authority from the plaintiffs, or their attorneys, to receive said treasury-notes in payment of said judgment; that no part of the principal or interest due on said judgment was paid otherwise than as above stated; that the only execution ever issued on said judgment was that issued on the 5th December, 1862, on which the interest and costs were paid, as shown by the sheriff's return; that the payment of said interest and costs to the sheriff was made in treasury-notes of the Confederate States; that said treasury-notes, and the treasury-notes of the State of Alabama, were worth in specie, on the 22d October, 1864, only one twenty-fifth of the amount of their face; that he tendered said treasury-notes to the plaintiffs, three or four days after he received them, and said plaintiffs refused to receive them; that said notes were, at the time he received them, so far as he knew, the only currency of the country, and were alone received and paid out as money in the ordinary business transactions of the country; and that he received and paid out such notes in the transaction of his official business as clerk. Said witness stated, on cross examination, that the defendant Aicardi applied to him as clerk, a few days before he received said notes as aforesaid, to take said notes in payment of said judgment, and offered to pay the same thereon; that thereupon, doubting the propriety of his receiving said notes, he wrote to the plaintiffs' attorney, inquiring if he was willing to accept said notes; that he

waited, as he supposed, long enough to receive an answer from said attorney, and, failing to receive an answer, concluded to take said notes, and did take them accordingly, as above stated, in satisfaction of said judgment." It was further proved, on the part of the defendants in the judgment, that on the 22d December, 1862, when said endorsement was made on said execution, said treasury-notes were selling in the market at one-third of their nominal value in specie. This being all the evidence, the court set aside the entry of satisfaction; to which ruling an exception was reserved by the defendants, and which is now assigned as error by them.

ALEX. & JNO. WHITE, for the appellants.—1. The statute gives the clerk authority to receive payment of any judgment in his court.—Code, § 651 ; Revised Code, § 771. He is thus made the agent of the parties, and holds the same relation to them that a sheriff would occupy who had an execution in his hands.—*Robinson v. Garth*, 6 Ala. 208 ; *Adams v. McMillan*, 7 Porter, 73. By express statute in this State, the payment of an execution in Confederate money was presumed to be made with the assent of the plaintiff, unless gold or silver, or its equivalent, was previously required in writing.—Acts of 1863, p. 56. The equity of this statute applies to payments made to the clerk of the court, whether before or after the issue of execution. The statutory author ty of the clerk is not limited to the receipt of gold and silver : he has a discretionary authority to receive anything which is then passing current in the community as money, although it may not be convertible at pleasure, at its nominal value, into specie.—*Haynes v. Wheat & Fennell*, 9 Ala. 247. That bank-notes, though depreciated, are money within the meaning of this rule, see *Miller v. Race*, 1 Barr, 457 ; 6 Har. & John. 53 ; *Scruggs v. Gass*, 8 Yerger, 177 ; *Bayard v. Shunk*, 1 Watts & S. 95. In October, 1864, State and Confederate treasury-notes were the only currency of this country. They were current in all ordinary business transactions, and their use was sanctioned and fostered by legislative enactment. Gold and silver were then, as they are now, simply a marketable commod-

ity, and not a circulating medium; were quoted in the prices-current, and bought and sold, like any other article which has a marketable value. Indeed, there has never been a time in the history of Alabama, when gold and silver constituted more than a small fractional part of the currency. A payment in Confederate treasury-notes, in October, 1864, stands on the same ground as a payment in United States treasury-notes at the present time: if the latter would be held sufficient, the former must, and for the same reasons. In this case, moreover, the plaintiffs had, by implication at least, authorized the clerk to receive Confederate treasury-notes in payment of their judgment, since they had expressly authorized the sheriff to receive such notes in payment of the interest.

2. The plaintiffs had precluded themselves from setting aside the entry of satisfaction, by their long acquiescence in the payment and receipt of the money. The payment was made in October, 1864 ; the motion to set aside the entry of satisfaction was not made until after the lapse of eighteen months, when Confederate money had become worthless, and the defendants could not be placed *in statu quo*. The defendants ought certainly to have been notified, within a reasonable time, that the payment was repudiated. For analogous cases, see *Dill v. Camp*, 22 Ala. 258 ; *Hunt v. Sylk*, 5 East, 449 ; *Parker v. Palmer*, 4 B. & A. 387 ; *Burton v. Stewart*, 3 Wendell, 236. If the clerk had been the private agent of the plaintiffs, their ratification of the payment would have been presumed from their long acquiescence ; and the same principle ought certainly to be applied in the case of a public officer, who is acting in the discharge of an official duty imposed on him by statute.— Livermore on Agency, vol. 1, p. 45; 12 Johns. 300; 1 Johns. Cases, 110 ; 3 Cowen, 281 ; 4 Mason, 296 ; 2 Vesey, 239 ; 2 Atk. 251.

PETTUS & DAWSON, *contra.*—1. The statutory power of the clerk to receive payment of a judgment is limited to the reception of lawful money, such as the plaintiff would be compelled to accept from the debtor ; and if he receives anything else, the plaintiff may, at his option, proceed

either against him, or against the debtor on the judgment. Any other rule would enable the officer to destroy the plaintiff's security for his debt, without his consent, or against it.—*Catlett v. Alexander*, 4 How. (Miss.) 404 ; *Bank of Orange v. Wakeman*, 1 Cowen, 46 ; *Munford v. Armstrong*, 4 Cowen, 553 ; *Wickliffe v. Davis*, 2 J. J. Mar. 69 ; *Griffin v. Thompson*, 2 How. (U. S.) 244. The case of *Haynes v. Wheat & Fennell*, 9 Ala. 239, is opposed to the current of authority on this point, and ought to be overruled on principle. But even that case does not sanction the payment of paper currency so greatly depreciated as the Confederate treasury-notes are shown to have been in this case.

2. The sheriff was authorized, by the act approved December 8, 1863, to receive Confederate treasury-notes in payment of an execution, unless the plaintiff, by written endorsement on the execution, demanded payment in gold or silver. But there is an obvious distinction between sheriffs and clerks. By placing an execution in the sheriff's hands, the plaintiff actively interferes, and demands his money ; but a payment to the clerk is a voluntary act on the part of the defendant, made without the plaintiff's assent, express or implied. The plaintiffs below recognized the validity of the payment to the sheriff, on the execution, because it was authorized by their attorneys ; but they never authorized the payment to the clerk, and had a right to repudiate it.

JUDGE, J.—On the 22d of October, 1864, the clerk of the circuit court of Dallas county received from the appellants, in payment of a judgment which had been rendered against them in said court, payment thereof in Confederate States treasury-notes, and notes of the State of Alabama. The latter notes were issued during the late war, and were made redeemable in Confederate States treasury-notes, or five per cent. coupon bonds of the State, at the option of the State. The clerk made an official entry on the execution docket, of the payment of the full amount of the judgment, which contained no statement, or explanation, as to the character of the funds he had re-

ceived in payment. At the spring term, 1866, of the court the plaintiffs in the judgment moved the court to set aside the entry of satisfaction which had been thus entered. The motion was granted, and an execution awarded on the judgment. This action of the court is now assigned for error, and presents the question, Was the judgment satisfied, as against the plaintiffs therein, by the action of the clerk as above stated?

While the clerk of a court, in which a judgment is rendered, has authority, under our statute, to receive payment of it; still, as against the plaintiff, he can receive in such payment *money* only—such money as the plaintiff is bound to accept. What, at the date of the entry of satisfaction in the present case, was such money? The answer is, that by the law, as it then stood, gold or silver coin only was a legal tender in payment of debts; and as the plaintiffs could not have been required to accept anything else in satisfaction of their demand, the clerk was authorized to receive nothing else in such satisfaction, without the consent of the plaintiffs.

We should not deem it necessary to say more in support of this proposition, but for the decision of this court in the case of *Haynes v. Wheat & Fennell*, 9 Ala. 239. The doctrine of that case is, that where bank-notes, whether "convertible at pleasure into specie, for their nominal amount, or not," are current as money in the ordinary transactions of commerce—excluding the precious metals from general use, and constituting the actual medium of exchange—clerks and sheriffs have the power to receive them in satisfaction of judgments and executions; and that no satisfaction of a judgment or execution, thus effected, can be set aside by the plaintiff, even though effected without his consent.

This case, it is believed, is opposed to the decided current of authority on this question, and is irreconcilable, on principle, with the later decisions of *West, Oliver & Co. v. Ball & Crommelin*, 12 Ala. 340, and *Chapman, Lyon & Noyes v. Cowles*, decided at the June term, 1867. In each of the last mentioned cases, it was decided, in effect, that an attorney-at-law, in virtue of his general powers as such,

has no authority to receive, in payment of a debt placed in his hands for collection, anything else than gold or silver. If a clerk, or sheriff, may receive in satisfaction of a judgment or execution, without the consent of the plaintiff, and bind him thereby, current bank-notes, *because they are money,* it would seem to follow, that the plaintiff should be compelled to receive the same notes, if taken by his attorney, *because they are money.* The true rule in such cases, however, is clearly stated by Goldthwaite, J., in *Holt v. Robinson,* 21 Ala. 106. In that case, the sheriff had taken the promissory note of a third person, in payment of the execution, and returned the execution satisfied, without qualification. This was held to be a satisfaction of the execution, *as to all persons but the plaintiff in the judgment ;* that " on his motion, alone, could the return have been set aside; and that as between the sheriff and the defendant in execution, the former was bound to pay the amount according to his return."

The rule thus announced, in *Holt v. Robinson,* is, we repeat, the correct rule, in all cases where the officer receives in satisfaction of the judgment, anything which the plaintiff is not compelled to receive. It secures to the plaintiff the full measure of all his legal rights, protects the defendant, and fixes a just responsibility upon the officer.—See, also, *Reed v. Pruyn & Statts,* 7 John. 425.

We have met with but a single adjudication, which seems at all to sustain the principles of *Haynes v. Wheat & Fennell,* *as applied* in that case ; and that is the case of *Crutchfield v. Robbins, Tingley & Co.,* 15 Humphreys, 15. The ground of decision in the last mentioned case is, that " current *convertible* bank-paper is money ;" which does not go quite so far as *Haynes v. Wheat & Fennell ;* though both, in the application made of the principles decided by them, are alike obnoxious to sound reason and authority. As opposed to these two adjudications, the following authorities are cited : *Griffin v. Thompson,* 2 How. (U. S.) 244 ; *Gwin v. Breedlove,* 2 How. (U. S.) 29; *McFarland v. Gwin,* 4 How. (U. S.) 717 ; *Catlett v. Alexander,* 4 How. (Miss.) 404 ; *Morton v. Walker,* 7 How. (Miss.) 554; *Anderson v. Carlisle &*

*White, ib.* 408 ; *Tuft v. Fulgham,* 5 How. (Miss.) 621 ; *Plan-ter's Bank v. Scott,* 5 How. (Miss.) 246 ; *Anketell · v. Torrey,* 7 Sm. & Marsh. 467 ; *Randolph v. · Ringgold,* 5 Eng. 279 ; *Wickliffe v. Davis,* 2 J. J. Marsh. 69 ; *Trumbull v. Nichol-son,* 26 Ill. 49 ; *Armstrong v. Garrow,* 6 Cow. 465 ; *Hevener v. Kerr,* South. (N. J.) R. 58 ; *Coxe v. State Bank,* 3 Hals. 172 ; *Moody v. Mahurin,* 4 N. H. 296 ; *Sinclair v. Pierce,* 5 J. J. Marsh. 64. Other citations of authority might be made, but we deem the above sufficient.

We feel constrained to overrule as authority the case of *Haynes v. Wheat & Fennell.*

The judgment of the court below is affirmed.