# Noble *v.* The State.

## *Indictment for Embezzlement.*

1. *Embezzlement can not be committed with different intents.*—An indictment charging that the defendant converted one hundred and eighty dollars, *or other large sum of money*, is fatally defective. The offence is not one that may be committed with different means or intents, or which may lead to different results; nor is it a case of several offences of the same character.

2. *Every charge must contain a substantial offence.*—Where two or more offences are laid in the same count disjunctively, each separate alternative charge must contain a substantive offence, charged with that degree of certainty which the statute requires.

3. *Certainty in an indictment is essential.*—In this case, the indictment is nothing more than a charge that the defendant knowingly converted or applied to his own use a large sum of money. This would be fatally uncertain and defective in a civil proceeding, and is equally so in an indictment.

4. *The agent of the auditor, who substitutes one currency for another of less value, is guilty of felony.*—A person who, representing and acting for the auditor in his official character, receives national currency as a part of the revenue of the State, and substituting for it a currency of less value, knowingly converts or applies any part of it to his own use, or to the use of another person, is guilty of a felony.

5. *The conversion of money by the collector is punished under funding act of 1873.*—The unlawful conversion of money, which the officer himself col-

[Noble v. The State.]

lected from the tax-payer, is punishable under section fourteen of the funding act of 1873.

6. *Every conversion of revenue is not indictable.*—It is not every conversion of the revenue which will constitute an indictable offence. A substitution of money of the same class, of equal or greater value, will not necessarily be criminal: hence, in prosecutions under the statute, the intent with which the substitution is made becomes material, and any relevant evidence to show the value of the substituted currency is admissible.

7. *Bank-notes included under the name of money.*—Since the introduction and free use of bank-notes and treasury-notes as a circulating medium and standard of value, they are understood to be embraced in the generic term money, as much as the authorized coin of the country.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

At the February term, 1877, of the City Court of Montgomery, the grand jury presented the following indictment: "The State of Alabama, Montgomery county. The grand jury of the said county charge, that before the finding of this indictment, William R. Noble knowingly converted, or applied to his own use, one hundred and eighty dollars, or other large sum of money, being a part of the revenue of the State of Alabama, against the peace and dignity of the State of Alabama." The defendant demurred to the indictment; the demurrer was overruled, and the defendant pleaded not guilty.

The defendant was employed as a clerk in the office of the auditor of the State. During his employment, the probate judge of Madison county sent by the express company to R. T. Smith, Auditor, a package containing "sixteen hundred and twenty-three 35-100 dollars of the revenue of the State of Alabama." This sum was composed of "State certificates, commonly called 'Patton money,' State obligations, commonly called 'horse-shoe money,' and two hundred and eighty-three 35-100 dollars of the paper currency of the United States." The package was obtained by the defendant from the office of the express company at Montgomery. On the third of May, 1875, a sum of money equal to that contained in the package was paid by the defendant into the treasury of the State, "under a warrant called a covering warrant, regular in form and signed by the auditor. On the back of the warrant, in the handwriting of the defendant, was the following memorandum:

"Currency, $103.35; State certificates, $20.00; State obligations, $1500.00.—$1623 35."

Evidence was offered by the State, showing that in May, 1875, "State obligations and certificates were selling in the market at a discount of about twenty-five cents upon the

dollar. To this evidence the defendant objected, on the ground that it was illegal, irrelevant, and inadmissible under the indictment in the case." The objection was overruled, and the defendant excepted.

On the part of the defendant, no evidence was offered.

The defendant then moved the court "to exclude from the jury all the evidence, as improper, inadmissible, and insufficient to support the charge in the indictment." But the court refused the motion, and the defendant excepted. He then moved "to exclude the evidence relative to the package of currency, State obligations and State certificates sent by the judge of probate of Madison county, as illegal and irrelevant." The court overruled the motion, and the defendant excepted.

The court, among other matters, charged the jury, "that for all the purposes of this indictment, the paper currency of the United States, whether issued by the government or by the national banks, must be treated as money." To this charge the defendant excepted.

The court also charged the jury, "that the fourteenth section of the act of the legislature of this State, approved December 19, 1873, entitled 'An act to provide for the funding of the domestic debt of this State,' was entitled to no control or influence on this case." To this charge the defendant excepted.

The court further charged the jury, "that if, in May, 1875, and in the county of Montgomery, the defendant received the package mentioned in the testimony of the probate judge of Madison county, and if the contents of the package are correctly stated in the testimony of that judge, and were a part of the revenue of this State; and if, in May, 1875, and in Montgomery county, the defendant converted, or applied to his own use, any part of the United States paper currency contained in said package, by withholding any part thereof, and by paying, in lieu of the part so withheld, into the State treasury, State certificates or State obligations of less value in the market—then they should find the defendant guilty under this indictment." To this charge the defendant excepted.

The following charges were asked by the defendant in writing:

1. "That the paying into the treasury of different money than that received, was, in 1875, punishable only under the act of 1873, approved 19th day of December, 1873, and that the indictment in this case is not framed under that act; and

[Noble v. The State.]

the defendant can not be convicted on the present indictment under the facts shown by the evidence.

2. "That the jury can in no event find the defendant guilty, unless they believe, from the evidence, beyond a reasonable doubt, that the money converted by the defendant was gold or silver coin, or legal tender notes of the United States, and if there is no evidence, or insufficient evidence of this fact, the jury should find for the defendant."

The court refused to give the charges, and to the refusal of each of the charges the defendant excepted.

RICE, JONES & WILEY, for the appellant.—1. If any offence is shown in the indictment, it certainly is not embezzlement; but only a distinct statutory offence. It is alleged that the indictment is authorized by, and framed under section 115 of the revenue law of March 19, 1875 (Acts 1874–5, p. 45), which provides that "if any officer or person knowingly converts or applies any of the revenue of the State, or of any county thereof, to his own use," &c., "he shall be guilty," &c. It is obvious that an indictment containing the very words of that section and charging the accused with converting or applying a part "of the revenue of the State," without specifying any particular part, would be insufficient. Hence, it is plain that to make an indictment good under the section, the description and specification of what was converted or applied must go beyond the words of the section, and that the Code can not be invoked in aid of such an indictment.—30 Ala. 583; *Grant v. The State*, 55 Ala. 201.

2. The indictment is bad beyond all doubt, if the word money therein used is to be taken in the sweeping sense given to it in the first section of said act of 1875. If that broad definition is adopted, then the indictment is, in legal effect, the same as if it charged the application or conversion of one hundred and eighty dollars of gold, silver, or other coin, or bills of exchange, or bank-bills, or other bills or notes authorized to be circulated as money. No such indictment can be sustained.

3. If the word money is taken in its settled and fixed constitutional and legal sense, shown in 4 Alabama, 140, and many other cases, then the indictment is too uncertain. The uncertainty is made conspicuous by the words "or other large sum of money."—20 Ala. 83; 32 Ala. 583. The prosecution is in a dilemma: for any construction which makes the indictment good, necessarily makes one or more of the charges and refusals to charge, palpably erroneous.

[Noble v. The State.]

The indictment does not fit the evidence and the rulings of the City Court, or the evidence and rulings of that court does not fit the indictment. The court below should have sustained at least one of the motions made to exclude evidence, which motions were made after the evidence was closed. 7 Porter, 437 ; *Camp v. The State,* 27 Ala. 53. The evidence as to the market value of State obligations or certificates was palpably illegal and irrelevant. Their market value was no part of the case. If the evidence shows any offence, it shows the one created by the fourteenth section of the act of 1873.—Acts of 1873, p. 46. And therefore the indictment for it should have been framed under that section ; but it is not so framed.—18 Ala. 415 ; 21 Ala. 218 ; 27 Ala. 53.

4. The act of 1873 did not repeal section 128 of the Revenue Law of 1868 (Pamph. Acts of 1868, p. 337), nor did said act of 1875 repeal the act of 1873. Section 115 of the act of 1875, as to the ingredients of the offence therein provided for, is substantially the same as said section 128 of the act of 1868. And there is no conflict between either of them and the act of 1873. Each has a distinct field of operation, and may well stand together. The act of 1873 operates precisely and specifically on just such substitution or exchange of currency as was proved in this case, and exempts or excepts such substitution or exchange from said act of 1875. As against the State such exchange or substitution is not a penal or indictable conversion or application, otherwise than by the said act of 1873.—9 Ala. 484, near close of the opinion.

JOHN W. A. SANFORD, Attorney-General, *contra.*

STONE, J.—We often find, in opinions given by judges, the expression " that the rules of pleading are the same in criminal cases as in civil."—1 Bish. Cr. Proc. § 43. This, another adds, " though the books contain more or less such language as is mentioned [above], and though this language is in a certain sense correct, still the practice is to require greater strictness in criminal matters than in civil."—*Ib.* § 44. We think we may safely assert that, in the absence of statutory regulations, as high a degree of certainty is required in criminal pleadings as in civil.

In Bish. Cr. Proc. § 333, it is said to be " an established rule in respect to the statement of the offence in the indictment, that it must not be stated in the disjunctive, so as to leave it uncertain what is really intended to be relied upon as

the accusation." So, this court held, in *Johnson v. The State*, that an indictment which charged that the defendant obstructed a highway " by fence, bar, or other impediment," was fatally defective.—32 Ala. 583.

Our statutes have somewhat relaxed the common law doctrine as to certainty and completeness of averment in criminal pleading.—See Code of 1876, §§ 4785, 4787, 4788. So, in three particulars, it is provided that the averments may be stated disjunctively :

" § 4796. When the offence may be committed by different means, or with different intents, such means or intents may be alleged in the same count in the alternative.

" § 4797. Where an act is criminal, if producing different results, such results may be charged in the same count in the alternative.

" § 4798. Where offences are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative."

The present indictment charges that the defendant " knowingly converted or applied to his own use one hundred and eighty dollars, or other large sum of money." It will be observed that this is not the case of an offence that may be committed with different *means*, or *intents*, or which may lead to different *results*. Nor is it a case of *several offences* of the *same character*. Hence this case does not fall within either of the sections copied above.

In *Johnson v. The State, supra*, and in *Horton v. The State*, (53 Ala. 488), we held that when two or more offences are charged in the same count disjunctively, each separate, alternative charge must contain a substantive offence under the law, charged with that degree of certainty which our statute requires, namely, " in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." This is probably nothing more nor less than the ' certainty to a common intent,' of which Lord COKE speaks.

Applying these rules : the indictment, in legal effect, is nothing more than a charge that the defendant knowingly *converted or applied to his own use a large sum of money.* This would be fatally uncertain and defective in a civil proceeding, and is equally so in an indictment. Under the form 50, of the Code of 1876, it would have been suffi-

[Noble v. The State.]

·ciently certain if the averment had been "about the amount of" [any named sum.]

The graver question raises the inquiry, under what statute should the offence shown in the evidence in this cause be prosecuted? It is contended for the prosecution that the misconduct which the testimony tends to prove falls under section 115 of the Revenue Law, approved March 19, 1875. That section provides, " that if any officer or person applies any of the revenue of the State, or of any county thereof, to his own use, or the use of any other person, he shall be deemed guilty of a felony, and upon conviction thereof be fined not less than two hundred, nor more than one thousand dollars, and be imprisoned in the penitentiary not less than one year, one or both, at the discretion of the court trying the same."—Pamph. Acts, p. 45. This statute, in language, is not materially different from section 128 of the revenue law of 1868, save that it denounces the act as a higher grade of offence, and fixes a severer punishment.—Pamph. Acts, p. 337.

Considering this statute by itself, there can be no question that the act described by the witnesses amounts to a conversion or application of the money, part of the revenue of the State, to the use of the defendant, or of some other person. The direct tendency of the testimony was to show that the defendant, acting for and representing the auditor in his official capacity, received national currency—either legal tender treasury notes of the United States, or notes of national banks ; that he appropriated one hundred and eighty dollars of the same, and substituted therefor, and paid into the treasury, the same amount, one hundred and eighty dollars, in State obligations, worth at that time in the market considerably less than the national currency he received.

Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition, or the exclusion of the owner's rights.—Bouvier's Law Dic. title *Conversion*; see 1 Addison on Torts, 393 ; *Moody v. Keener*, 7 Por. 218; *Daniel v. Thompson*, 13 Ala. 440; *Glaze v. Mc-Millan*, 7 Por. 279 ; 2 Brick. Dig. 486, §§ 36, 37, 43.

We do not understand the appellant—defendant in the City Court—as seriously controverting this general proposition. He takes the position that section 14 of the funding act (Pamph. Acts 1873, p. 46), makes special provision for the act shown in this evidence, and thereby segregates this offence from the general provisions of the acts of 1868 and

[Noble v. The State.]

1875, copied above. The material provisions of the section of the act of 1873 referred to, are as follows:

"Section 14. That it shall be the duty of every collector· of taxes, and every receiver of public moneys in this State, to keep and faithfully pay into the treasury, or to the depository appointed by law for the keeping of the public money, the identical money received by him or them from the tax-payer or tax-payers; and it is hereby made unlawful for any person or officer of this State to use or apply any portion of· the money paid him in the course of his official duty, as collector of taxes, or receiver of any part of the State revenue,. to any other use or purpose than payment into the treasury,. in the manner and form in which such money was so received by him. And when any collector of taxes in this State, or any person who is by law authorized to collect and receive any part of the State revenue, receive in payment of any taxes, licenses or public dues, any of the obligations issued under the authority of this State, he shall, in a proper book, ·make an entry of the obligations received by him, and the date of such receipt, which date and entry shall correspond with the date of the receipt given to the payer of taxes from whom such obligation was received; and such collector of taxes, or receiver of the State revenue, shall produce said book to the auditor of the State at the time when his account is audited and adjusted, in default of which entry, or production of said book, such obligation or obligations shall be received by the treasurer for the amount only of the principal thereof, without interest."

Many provisions of this statute, and notably those after· mentioned, show that the testimony in the present record does not make a case that falls within its provisions. It is the *money received from the tax-payer* this statute requires to be kept and paid into the treasury. The collector is to make an entry in a proper book, when he collects in State obligations, and *shall produce said book to the auditor of the State at the time when his account is audited and adjusted*. These clauses show that the statutory offence it denounces, can be committed only by the conversion or unauthorized application of money which the officer proceeded against, himself· collected from the tax-payer, and whose account it is the duty of the auditor to audit and adjust.—See *Smith v. Speed*, 50 Ala. 276.

Since the introduction and free use of bank notes and treasury notes as a circulating medium and standard of value, they are as readily understood as being embraced in the·

[Noble v. The State.]

generic term money, as is the authorized coin of the country. *Haynes v. Wheat*, 9 Ala. 239; *Corbett v. The State*, 31 Ala. 329; *Grant v. The State*, 55 Ala. 201.

We have many statutes which employ the general designation money, which, in their construction, would force us to hold that the word embraces every species of lawful circulation which passes from hand to hand as money.—See Revenue Law of 1868, § 6, subds. 19, 20, 21; Revenue Law of 1875, § 5, subds. 18, 19, 20. In the fourteenth section of the funding act of 1873, which it is contended this case falls under, it is clear that the term money is employed in the generic sense above expressed. See, also, Code of 1876, sections 4261 *et seq.* 4373, 4377 *et seq.* Section 4811 of the Code of 1876, applying, as it does, expressly to embezzlement, lays down a rule which we think should govern in all cases of indictment for that offence; and under the general name, money, proof should be received of any lawful circulating medium, which usually circulates as money.

While we have declared above that the substitution for National currency of State obligations, alleged to have been made by defendant, was a conversion by him, yet, every change of the money collected into other funds, of the same class, or of equal or greater value, would not necessarily be within the spirit of the statute, or punishable as a conversion. But when the money received is appropriated by the collector or receiver, and its place supplied by another circulating medium, or other commodity receivable in payment of taxes, but of less value than the money thus received and appropriated, a case is made which falls directly within the letter and spirit of the statute. Whether that which was substituted was equally or less valuable than the money received and appropriated, is a material inquiry in the trial of every such prosecution; for it tends to show the motive of the exchange. The City Court did not err in receiving proof of the value at which State obligations were held, or were convertible, at the time of the exchange.

For the defect in the indictment, pointed out above, the judgment of the City Court is reversed and the cause remanded. Let the defendant remain in custody until discharged by due course of law.